Slip Op. 09-87

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ZHEJIANG NATIVE PRODUCE & ANIMAL BY-PRODUCTS IMPORT & EXPORT CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: Jane A. Restani, Chief Judge |
| | : | |
| UNITED STATES, | : | Court No. 08-00251 |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| AMERICAN HONEY PRODUCERS ASSOCIATION and SIOUX HONEY ASSOCIATION, | : | |
| | : | |
| Defendant-Intervenors. | : | |

## <u>OPINION</u>

[Plaintiff's motion for judgment on the agency record granted; matter remanded to Department of Commerce for determination of plaintiff's dumping margin.]

Dated: August 19, 2009

<u>Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP</u> (<u>Bruce M. Mitchell</u>, <u>Andrew T. Schutz</u>, <u>Elaine F. Wang</u>, and <u>Ned H. Marshak</u>) for the plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Reginald T. Blades, Jr.</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Jane C. Dempsey</u>); <u>Sapna Sharma</u>, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

<u>Kelley Drye & Warren LLP</u> (<u>Michael J. Coursey</u> and <u>R. Alan Luberda</u>) for the defendant-intervenors.

Restani, Chief Judge: This matter is before the court on the motion of plaintiff

Zhejiang Native Produce & Animal By-Products Import & Export Group Corp. ("Zhejiang") for

judgment on the agency record pursuant to USCIT Rule 56.2.  Zhejiang, an exporter of packaged

honey from the People's Republic of China ("PRC"), challenges the final determination of the

United States Department of Commerce ("Commerce") in the fifth administrative review of the

antidumping duty order on honey from the PRC.  See Honey from the People's Republic of

China: Final Results and Rescission, In Part, of Aligned Antidumping Duty Administrative

Review and New Shipper Review, 73 Fed. Reg. 42,321 (Dep't Commerce July 21, 2008) ("Final

Results").  Zhejiang contests Commerce's decision not to review Zhejiang individually as a

respondent and Commerce's calculation of Zhejiang's dumping margin.  For the reasons stated

below, the court grants Zhejiang's motion and remands this matter to Commerce to determine a

company-specific dumping margin for Zhejiang.

## BACKGROUND

In 2001, Commerce issued an antidumping duty order on honey from the PRC.

Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping

Duty Order; Honey From the People's Republic of China, 66 Fed. Reg. 63,670 (Dep't

Commerce Dec. 10, 2001).  Zhejiang requested that Commerce review Zhejiang's honey sales to

the United States during the fifth administrative period of review ("POR 5"), December 1, 2005

to November 30, 2006.  (App. to Pl.'s Mem. in Supp. of Rule 56.2 Mot. for J. Upon the Agency

R. ("Pl.'s App.") Tab 1, at 1.)  Commerce initiated an aligned administrative review of Zhejiang

and thirty other companies for POR 5 and new shipper review for QHD Sanhai Co., Ltd. ("QHD

Sanhai") in February 2007.  See Honey from the People's Republic of China: Initiation of New

Shipper Antidumping Duty Reviews, 72 Fed. Reg. 5265 (Dep't Commerce Feb. 5, 2007);

Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for

Revocation in Part, 72 Fed. Reg. 5005 (Dep't Commerce Feb. 2, 2007).  The administrative

review was rescinded as to twenty-two companies for which the petitioners, the American Honey

Producers Association and the Sioux Honey Association, withdrew their request for review.

Honey from the People's Republic of China: Notice of Partial Rescission of Antidumping Duty

Administrative Review, 72 Fed. Reg. 24,561 (Dep't Commerce May 3, 2007).

        Of the remaining companies, only four—Inner Mongolia Altin Bee-Keeping

("IMA"), Qinhuangdao Municipal Dafeng Industrial Co., Ltd. ("QMD"), Dongtai Peak Honey

Industry Co., Ltd. ("Dongtai Peak "), and Zhejiang—submitted quantity and value ("Q&V")

questionnaire responses and claimed shipments for the period of review.  Antidumping Duty

Administrative Review of Honey from the People's Republic of China: Selection of

Respondents, A-570-863, POR 12/01/2005–11/30/2006, at 2 (Apr. 17, 2007) ("Respondent

Selection Memorandum"), available at App. to Def.-Intervenors' Br. in Resp. to Pl.'s Rule 56.2

Mot. for J. on the Agency R. Tab 5.  On April 17, 2007, Commerce issued a memorandum

concluding that review of all four companies was not practicable because of resource constraints

arising from the "significant workload" Commerce faced in other antidumping proceedings.  Id.

at 2–3.  Commerce selected IMA and QMD, the two companies whose exports represented "the

overwhelming proportion of the total export volume under review," as the mandatory

respondents.  Id. at 4.  In a letter dated April 23, 2007, Zhejiang asked Commerce to reconsider

its decision and to select Zhejiang as a mandatory or voluntary respondent.[1]  (See Pl.'s App. Tab

---

[1] Dongtai Peak did not challenge Commerce's decision to limit the number of mandatory respondents and is not a party here.

2.)  During a telephone call on May 25, 2007, a Commerce official informed Zhejiang's counsel

that Commerce had considered the letter, but "the resource constraints identified in the . . .

respondent selection memorandum resulted in [Commerce's] being required to invoke its

statutory authority to limit the number of respondents it examined individually in this review."

(Id. Tab 5.)

        IMA subsequently withdrew from the administrative review on August 15, 2007.

(See id. Tab 6, at 1.)  On August 21, 2007, Zhejiang's counsel asked Commerce whether

Zhejiang would be selected as a mandatory respondent in light of IMA's withdrawal.  (Id. Tab

8.)  Commerce responded "that it would not be selecting Zhejiang as a mandatory respondent as

it is too late in the proceeding and Zhejiang had not filed responses to [Commerce's]

questionnaire as a voluntary respondent by the appropriate deadline."  (Id.)  QMD withdrew

from the administrative review on October 18, 2007.  (See id. Tab 9.)

        Commerce's January 2008 preliminary determination assigned a de minimis

dumping margin for QHD Sanhai; individual margins of 45.46% ad valorem to Zhejiang and

Dongtai Peak as non-examined, cooperative separate rate exporters; and a PRC-wide margin,

based on adverse facts available, to all other companies in the review.  See Honey From the

People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty

Administrative Review, 73 Fed. Reg. 2890, 2893–97, 2899 (Dep't Commerce Jan. 16, 2008)

("Preliminary Results").[2]  Zhejiang submitted a case brief, arguing that Commerce should have

---

[2] The 45.46% margin was assigned to the non-examined, cooperative separate rate exporters in the original investigation, based on the weighted average of the rates calculated for the mandatory respondents.  See Notice of Final Determination of Sales at Less Than Fair Value; Honey From the People's Republic of China, 66 Fed. Reg. 50,608, 50,609 (Dep't Commerce

(continued...)

reviewed Zhejiang as a mandatory or voluntary respondent.  (<u>See</u> Pl.'s Confidential App. Tab 20,

at 6–9.)  Commerce again rejected Zhejiang's argument.  <u>See</u> <u>Issues and Decision Memorandum</u>

<u>for the Final Results in the Aligned Fifth Administrative Review and Tenth New Shipper Review</u>

<u>of Honey from the People's Republic of China</u>, A-570-863, POR 12/01/2005–11/30/2006, at

13–15 (July 14, 2008) ("<u>Issues and Decision Memorandum</u>"), <u>available at</u>

http://ia.ita.doc.gov/frn/summary/PRC/E8-16624-1.pdf.  For its July 2008 <u>Final Results,</u>

Commerce arrived at an ad valorem rate of 104.88%, which it converted to a per-kilogram cash

deposit and assessment rate, and imposed a rate of $0.98/kg on Zhejiang and Dongtai Peak and

an otherwise applicable PRC-wide rate, based on total adverse facts available, of $2.06/kg.  <u>See</u>

<u>Final Results,</u> 73 Fed. Reg. at 42,322–23.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2)(B)(i).  The court must uphold Commerce's final determination in an antidumping

review unless it is "unsupported by substantial evidence on the record, or otherwise not in

accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Zhejiang claims that Commerce should have selected Zhejiang as a respondent in

the review and calculated an individual dumping margin for Zhejiang.  (Br. in Supp. of Pl.'s

Rule 56.2 Mot. for J. Upon the Agency R. ("Pl.'s Br.") 10–15.)  This claim has merit.

---

[2](...continued)
Oct. 4, 2001), <u>amended by</u> 66 Fed. Reg. at 63,672.  Commerce preliminarily applied the 45.46%
margin here because it was "the separate rate margin calculated in the most recent segment of
Honey from the People's Republic of China in which a separate margin was calculated."
<u>Preliminary Results,</u> 73 Fed. Reg. at 2893.

The antidumping statute states that as a general rule, Commerce "shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1). If, however, "it is not practicable to make individual weighted average dumping margin determinations . . . because of the large number of exporters or producers involved in the . . . review, [Commerce] may determine the weighted average dumping margins for a reasonable number of exporters or producers." Id. § 1677f-1(c)(2). The statute thus grants Commerce authority to limit the number of mandatory respondents only where a large number of exporters or producers are involved in the review.

Here, Commerce concluded that four was a large number of respondents in the context of "the various administrative circumstances" Commerce was confronting during the review and that individual examination of all four exporters and producers was not practicable because of its significant workload arising from other antidumping reviews and investigations. Issues and Decision Memorandum at 13–14. Commerce stated:

> The office to which this administrative review is assigned . . . does not have the resources to examine all such exporters/producers. This office is conducting numerous concurrent antidumping proceedings which place a constraint on the number of analysts that can be assigned to this case. Not only do these other cases present a significant workload, but the deadlines for a number of the cases coincide and/or overlap with deadlines in this antidumping proceeding. In addition, because of the significant workload throughout Import Administration, we do not anticipate receiving additional resources to devote to this antidumping proceeding.

Respondent Selection Memorandum at 2–3.

The court rejects Commerce's conclusion. The statute focuses solely on the practicability of determining individual dumping margins based on the large number of exporters or producers involved in the review at hand. See 19 U.S.C. § 1677f-1(c)(2). Accordingly,

Commerce may not rely upon its workload caused by other antidumping proceedings in

assessing whether the number of exporters or producers is "large," and thus deciding that

individual determinations are impracticable.  Commerce cannot rewrite the statute based on its

staffing issues.

     Longkou Haimeng Machinery Co. v. United States, 581 F. Supp. 2d 1344 (CIT

2008), does not support deference to Commerce's conclusion here.  In that case, Commerce had

selected three of the fifteen exporters and producers as mandatory respondents.  Id. at 1348.

Longkou upheld Commerce's decision not to examine two of the plaintiffs, who were non-

selected exporters, as voluntary respondents.  Id. at 1349–54.  Although the court stated that

"[t]he authority to limit the number of respondents for examination rests 'exclusively' with

Commerce," id. at 1352, this statement apparently refers to Commerce's authority to select the

number of respondents to review when individual review of all producers and exporters is not

practicable because the number of producers and exporters is large.  Whatever "exclusive

authority" connotes, the statute actually vests Commerce with "exclusive[]" authority only with

regard to the selection of "averages and statistically valid samples."  19 U.S.C. § 1677f-1(b).

Commerce, however, has no authority to limit the number of mandatory respondents it reviews

unless there is a large number of exporters or producers.  See 19 U.S.C. § 1677f-1(c)(2).  If that

precondition is met, it may then either use sampling or select entities "accounting for the largest

volume" of the subject merchandise from the exporting country that can reasonably be

examined.  Id.  Commerce chose the second option; it did not use sampling in either Longkou or

this case.

     Further, although the Longkou court determined that Commerce's careful

examination of resource constraints arising from other antidumping proceedings supported its

decision to review three rather than five of the fifteen exporters and producers, the court merely

recognized that Commerce has broad discretion in allocating its resources where the statute

permits Commerce to limit its review.  See Longkou, 581 F. Supp. 2d at 1353–54.  The issue of

whether the number of exporters and producers was sufficiently large to render individual review

impracticable was not before the court, as the plaintiffs conceded that Commerce had the

authority to limit the number of mandatory respondents to less than fifteen.  See id. at 1350.

By contrast, the number of exporters and producers initially involved in this

review, four, does not appear to satisfy the requirement that the number be "large" under any

ordinary understanding of that word.  In any event, not even four exporters or producers were

involved here because the two mandatory respondents withdrew from the review.  Only one

exporter, Zhejiang, preserved its request for individual review.  One is not a large number.  Cf.

Zenith Elecs. Corp. v. United States, 770 F. Supp. 648, 660 (CIT 1991) (holding that where

"Commerce had before it the exact production data relating to a single United States sale" and

made only three adjustments to the price, Commerce could not calculate a weighted average

under a former version of 19 U.S.C. § 1677f-1(a)(1), which granted Commerce authority to use

averages "only where 'a significant volume of sales is involved or a significant number of

adjustments to price is required'"), vacated in part by 865 F. Supp. 890 (CIT 1994).

Commerce cited two reasons for its decision not to select Zhejiang as a

respondent after the two mandatory respondents withdrew: "it [was] too late in the proceeding

and Zhejiang had not filed responses to [Commerce's] questionnaire as a voluntary respondent

by the appropriate deadline."  (Pl.'s App. Tab 8.)  The statute itself did not impose a time bar to

review, and the court need not determine the limits of Commerce's discretion to decline any

individual review after the selected mandatory respondents have withdrawn but others have

requested a review.  Here, Commerce's reasons are not persuasive.

        First, Commerce could have timely reviewed Zhejiang's data, as Commerce,

acting within the statutory deadlines, released its <u>Preliminary Results</u> in January 2008, five

months after IMA withdrew and three months after QMD withdrew, and its <u>Final Results</u> in July

2008, eleven months after IMA withdrew and nine months after QMD withdrew.  <u>See</u> 19 U.S.C.

§ 1675(a)(3)(A).  Second, and perhaps most importantly, Zhejiang timely filed its separate rate

certification and Q&V questionnaire response but did not file a response to questionnaire section

C (U.S. sales) or D (factors of production) for reasons not of its own making.  <u>See</u> <u>Preliminary</u>

<u>Results</u>, 73 Fed. Reg. at 2890–91; <u>Issues and Decision Memorandum</u> at 13 n.16.  The section C

and D responses for the mandatory respondents were not due until at least June 7, 2007, but by

then, Commerce had informed Zhejiang's counsel that Commerce would not accept Zhejiang as

either a mandatory or a voluntary respondent.[3]  <u>See</u> <u>Preliminary Results</u>, 73 Fed. Reg. at 2892;

(Pl.'s App. Tab 5).  Commerce did not leave open the possibility that it would consider Zhejiang

as a voluntary respondent if Zhejiang timely filed its questionnaire responses, contrary to

Commerce's practice of not discouraging voluntary respondents.  <u>See</u> Statement of

Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-

---

[3] Commerce must calculate an individual dumping margin for any voluntary respondent
who submits the information requested from the mandatory respondents "by the date specified"
for the mandatory respondents if "the number of exporters and producers who have submitted
such information is not so large that individual examination of such exporters or producers
would be unduly burdensome and inhibit the timely completion of the investigation."  19 U.S.C.
§ 1677m(a)(1)(A), (a)(2).

316, at 872 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201 ("Commerce, consistent with Article 6.10.2 of the [Antidumping] Agreement, will not discourage voluntary responses."). Thus, Commerce should not have penalized Zhejiang for failing to file its section C and D responses after indicating to Zhejiang that it would be futile to do so.

## CONCLUSION

Accordingly, Commerce's decision not to select Zhejiang for review was not supported by substantial evidence or in accordance with law. Zhejiang's motion for judgment on the agency record is granted. The court hereby remands this matter to Commerce to determine an individual dumping margin for Zhejiang based on Zhejiang's sales and factors of production data during POR 5.[4]

Commerce shall request any missing information and file its remand determination with the court within sixty days of this date. Zhejiang, the American Honey Producers Association, and the Sioux Honey Association have eleven days thereafter to file objections, and Commerce will have seven days thereafter to file its response.


                                                      /s/ Jane A. Restani
                                                      Jane A. Restani
                                                      Chief Judge


Dated: This 19th day of August, 2009.
          New York, New York.

_____

[4] Because Commerce must determine an individual dumping margin for Zhejiang, it is premature for the court to consider Zhejiang's alternative argument that it is entitled to a de minimis margin, rather than the $0.98/kg cash deposit and assessment rate. (See Pl.'s Br. 15–19.)

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                        Deputy Clerk